UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

PHILIP KENT,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

Case No.  1:16-CV-372

HON. GORDON J. QUIST

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-one years of age on the date of the ALJ's decision. (PageID.35, 62.) He previously obtained a high school education and had been employed as a welder/grinder. (PageID.80.) Plaintiff applied for benefits on July 1, 2013, alleging that he had been disabled since June 11, 2008, due to a low back injury / herniated lumbar disc with radiculopathy, headaches, and TMJ. (PageID.91, 154–155.) This application was denied on October 1, 2013, after which time Plaintiff requested a hearing before an ALJ. (PageID.104–116.) Shortly before the hearing, Plaintiff's counsel authored a letter amending the onset date to October 31, 2012. (PageID.164.)

On September 3, 2014, Plaintiff appeared with his counsel before ALJ Nicholas Ohanesian for an administrative hearing, at which time both Plaintiff and a vocational expert (VE) testified. (PageID.54–89.) On November 14, 2014, the ALJ issued his written decision, concluding that Plaintiff was not disabled. (PageID.35–52.) On February 24, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.28–32.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on December 31, 2013. (PageID.91.) Accordingly, to be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at step five. At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between his alleged disability onset date and his date last insured.[2] (PageID.40.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of: (1) degenerative disc disease of the lumbar spine with stenosis and radiculopathy; (2) migraine headaches; and (3) temporomandibular joint disorder (TMJ). (PageID.40–41.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.41.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> sedentary work as defined in 20 CFR 404.1567(a). The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He is limited to frequent exposure to extreme cold, extreme heat, humidity, hazards, lighting and noise above that of a normal office environment. Further, he must be provided the opportunity to change positions from standing to sitting or vice versa for one to two minutes every fifteen minutes.

---

[2] The ALJ noted that although Plaintiff's counsel had amended the onset date to a later date, the letter was not signed by Plaintiff, and accordingly the ALJ considered the application from the original onset date of June 11, 2008. (PageID.38.) Plaintiff does not allege this was in error.

(PageID.42.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.46.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work in the following representative jobs: packager sorter (3,000 positions), cashier (4,000 positions), and assembler (3,500 positions). (PageID.80–84.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.48.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from June 11, 2008, through December 31, 2013, the date last insured. (PageID.48.)

## DISCUSSION

On May 28, 2013, Dr. Shawn Ruth, Plaintiff's treating physician, completed an assessment of Plaintiff's ability to do physical work-related activities. (PageID.285–287.) When asked how many minutes or hours Plaintiff could sit without interruption, Dr. Ruth wrote "never." When asked how long Plaintiff could stand or walk without interruption, Dr. Ruth wrote "occasionally." Dr. Ruth provided the same answer when asked for the total amount of hours in an eight-hour workday Plaintiff could perform those activities. (PageID.285.) Dr. Ruth further indicated Plaintiff would need a sit/stand option, but would be in pain in either position. (PageID.285.) Plaintiff could never lift or carry fifty pound weights, and could only rarely lift lesser pound weights, including only five pound weights. (PageID.285.) Additionally Plaintiff could never bend or stoop, squat or kneel, or climb ramps or stairs. (PageID.285.) Plaintiff could only occasionally crouch or crawl. (PageID.285.) Plaintiff experienced headaches, and when asked for positive test results and objective signs, the doctor checked a box next to "MRI." (PageID.286.) Dr. Ruth indicated that, when experiencing a headache, Plaintiff would need to rest until the

5

symptoms were gone, and that this limitation went back to 2010. (PageID.286.) Dr. Ruth further opined that Plaintiff's pain would constantly interfere with his attention and concentration, and he would need to take unscheduled breaks each day lasting between thirty and sixty minutes. (PageID.286–287.) Finally, Dr. Ruth indicated that Plaintiff would have good days and bad days, and were he to work, he could be expected to miss more than four days of work each month. (PageID.287.) On August 11, 2014, after Plaintiff's date last insured, Dr. Ruth indicated these limitations were still valid. (PageID.240.) The ALJ assigned the opinion only limited weight. (PageID.45.) Plaintiff's sole claim of error is that the ALJ failed to provide good reasons, under the treating physician doctrine, for assigning the opinion less than controlling weight.[3] The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1

---

[3] The Court notes that the ALJ also considered Dr. Ruth's April 4, 2013, statement that Plaintiff "is unable to be gainfully employed and should likely go on disability." (PageID.272.) The ALJ gave the opinion "no weight," noting that opinions claiming an individual is disabled are reserved to the Commissioner. (PageID.44.) Plaintiff does not challenge the ALJ's consideration of this statement.

(6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.*  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

> The ALJ provided the following discussion of Dr. Ruth's opinion:
>
> Although Dr. Ruth has treated the claimant for a number of years, her [sic] assessment is not corroborated by the other evidence of record. In that regard, it is noted that she [sic] cites to the MRI as clinical support of the claimant's limitations; however, the review of the actual MRI report reveals that the claimant's spinal pathology has remained stable since 2010 and only minimal degenerative findings (Exhibit 3F/26), which surgeons have noted not to be of surgical significance (Exhibit 2F/1-2). Further, EMGs have been negative for radiculopathy (Exhibits 2F/3-6, 3F/31-34).  The claimant has also admitted to Dr. Ruth that he was able to complete his activities of daily living (Exhibit 9F/2-3), which undoubtedly exceed the restrictions, specifically the no sitting and only occasional walking / standing, she [sic] assessed.  Thus, based on the foregoing, her [sic] assessments are provided only limited weight.

(PageID.45.)

The Court finds the ALJ has provided good reasons, supported by substantial evidence, for assigning limited weight to the opinion. Dr. Ruth's opinion, contained in a three page worksheet, is remarkably lacking for any explanation for the severe limitations that were provided. The sole reference to any objective data was to an MRI, but as the ALJ noted, the MRI contained only mild findings, and the record contained no recommendations for surgery. Other examinations returned normal results, such as an EMG test showing no radiculopathy. Finally, Plaintiff's activities, including watching television, preparing simple meals, driving a car for less than twenty minutes, and playing cards and games with friends is inconsistent with the severity of Dr. Ruth's opinion. (PageID.179–180.) None of Plaintiff's arguments to the contrary is persuasive.

Plaintiff first questions the ALJ's reference to the November 12, 2012, MRI, admitting that although the MRI demonstrates Plaintiff's condition has remained stable when compared to imaging from 2011 and 2010, the ALJ ignores the substance of the MRI, and mistakenly references degenerative changes, rather than his spinal stenosis as the cause of his problems. (PageID.389–391.) Plaintiff's lay interpretation of this evidence, however, does nothing to demonstrate the ALJ's conclusion was erroneous. He points to no authority or medical record that would support this assertion. In any event, the MRI's findings reference Plaintiff's stenosis only as mild. (PageID.260.) More importantly, when the MRI was viewed by neurosurgeon Vicente Gracias, there was "nothing dramatic enough to warrant surgical intervention." (PageID.230.) Plaintiff argues that the ALJ's observation that "surgeons" recommended against surgery was incorrect. However, as the Commissioner points out, Dr. Gracias noted that Plaintiff had also been seen by several other neurosurgeons. (PageID.229.) The record does not indicate that any of those surgeons found surgery was warranted. Plaintiff also argues that Dr. Gracias' opinion conflicts with the opinion of Dr. Kenneth Easton, who did recommend surgery. (PageID.365.) But Dr. Easton's

treatment note did not indicate that he recommended surgery, only that he could "potentially" decompress the L4-L5 and that he could only give a seventy percent chance that the treatment would work. (PageID.366.) When Plaintiff declined surgery, Dr. Easton indicated he would keep the door open to future treatment. (PageID.366.) Thus the conflict that Plaintiff alleges is not present. In any event, even if there was a conflict, substantial evidence would still support the ALJ's observation.

Next, Plaintiff argues the ALJ's statement regarding radiculopathy runs contrary to his step two determination as well as the caveat contained in the treatment note referenced by the ALJ. (PageID.392.) The ALJ's reasoning here could admittedly be more clear. But it appears the ALJ referenced the December 5, 2012, test merely as one of several other records he found did not support the severity of Dr. Ruth's opinion. The finding of a severe impairment at step two is a "de minimis" hurdle and "says nothing as to its limiting effects." *Simpson v. Comm'r of Soc. Sec.*, No. 1:13-CV-640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). Here, it appears the ALJ gave Plaintiff the benefit of the doubt by finding radiculopathy at step two, but found that Plaintiff's complaints of this condition were not supported by the record. The Court finds no error here.

Plaintiff also faults the ALJ for failing to discuss several records, including Dr. Ruth's treatment notes. Contrary to this assertion, several of the notes were referenced by the ALJ, albeit not directly in reference to Dr. Ruth's opinion or in the manner that Plaintiff would perhaps have preferred. But in any event, Plaintiff's burden on appeal is much higher than citing evidence on which the ALJ could have found a greater level of restriction. He must show that the ALJ's factual finding is not supported by substantial evidence. *See Jones*, 336 F.3d at 477 ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of

the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). The ALJ is not required to discuss every piece of evidence, especially when considering a medical opinion, and his failure to do so does not indicate that the evidence was not considered. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); accord *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006). Plaintiff does not demonstrate how any of these records render the ALJ's decision to accord limited weight to Dr. Ruth's opinion unsupported by substantial evidence.

Finally, Plaintiff argues it was in error for the ALJ to find Plaintiff's reported daily activities were inconsistent with Dr. Ruth's opinion that Plaintiff could never sit and only occasionally stand or walk. (PageID.392–393.) However, based on his testimony and function reports, Plaintiff is able to do more than "never" sit. Plaintiff argues, however, that Dr. Ruth's opinion should be read in concert with an April 22, 2013, Physical Work Performance Test, which was completed by a physical therapist and submitted alongside Dr. Ruth's opinion. Like Dr. Ruth's opinion, the test found that Plaintiff could never sit, but could occasionally stand and walk. (PageID.283.) The test clarified that "'[n]ever' scores . . . do not mean the client can literally never perform them. Rather, they are able to be performed for brief periods throughout the day but are not able to be performed for up to 1/3 of the day." (PageID.284.) Plaintiff claims that Dr. Ruth's opinion "likely" used the terms never and occasionally in the same way. (PageID.393.) Perhaps. But the problem here is that Dr. Ruth did not indicate as such on the assessment he completed. The assessment was clear with what was expected, and contained its own definitions. The ALJ's reading of the opinion was therefore not unreasonable. This, of course, only highlights the problems with assessment worksheets that are unaccompanied by meaningful explanation.

In sum the ALJ provided good reasons, supported by substantial evidence, for assigning limited weight to Dr. Ruth's opinion. Plaintiff's claim of error is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.


Dated:  February 17, 2017                                /s/ Gordon J. Quist
                                                              GORDON J. QUIST
                                                       UNITED STATES DISTRICT JUDGE